# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By dreese at 10:23 am, Jun 23, 2015

In the matter of: )
)
IDA M. MINGLEDORFF, )   Chapter 13 Case
)
  Debtor. )   Number 12-41543-EJC
_____)

## MEMORANDUM OPINION

This case is before the Court on the Trustee's Application for Trustee's Fees ("Fee Application") (dckt. 113) filed by Benjamin R. Roach ("Mr. Roach" or "Chapter 7 Trustee"), the duly appointed Chapter 7 trustee in Ida M. Mingledorff's ("Debtor") recently reconverted case. Mr. Roach seeks "an order allowing a Chapter 7 administrative expense claim in the Chapter 13 in the amount of $3,000.00 to be paid under the Chapter 13 plan." (Dckt. 113.) Mr. Roach argues that he is entitled to these fees based on the work he performed before the case was converted back to Chapter 13, which included his hiring of counsel to pursue an adversary proceeding to sell the Debtor's jointly owned real estate. The issue presented by the Fee Application is whether, and to what extent, a Chapter 7 trustee who neither makes distributions nor turns over any funds to parties in interest is entitled to compensation under §§ 326 and 330(a) of the Bankruptcy Code. This matter came on for hearing on April 6, 2015, after which the Court requested that the parties submit briefs.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This matter is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(B). In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

On August 6, 2012, the Debtor filed her Chapter 13 petition and proposed plan to repay creditors. (Dckts. 1, 4.) The Debtor listed among her assets in Schedule A two items of real property: (1) her principal residence at 40 Dunnoman Drive, which she valued at $215,300.00 and noted was subject to a lien in favor of Regions Mortgage in the amount of $187,265.00 and in which she claimed an exemption of $21,500.00; and (2) a one-half interest in certain real property located at 4501 Meadow Street, which she valued at $56,400.00. The Debtor did not claim an exemption in the unencumbered Meadow Street property. (Dckt. 1.)

The Debtor's sole income reflected in her Schedule I was Social Security benefits of $1,012.00 per month, but she lived with one of her sons who was paying the mortgage to Regions Mortgage as well as the utility bills for the home. The Debtor's plan, as originally filed, proposed monthly payments of $550.00 for sixty months and provided for a 100% dividend to unsecured creditors. (Dckt. 4.) The

%AO 72A
(Rev. 8/82)

2

Debtor's plan was confirmed in October 2012, and the order granting confirmation required plan payments of $796.00 per month. (Dckt. 26.)

In March 2013, O. Byron Meredith III ("Chapter 13 Trustee"), the duly appointed Chapter 13 trustee in the Debtor's case, moved to increase the amount of the Debtor's plan payments to $887.00 per month in order to maintain the 100% dividend provided for in the plan based on the amount of timely filed claims. (Dckt. 30.) Although the Debtor consented to this increase, she failed to stay current with her required monthly payments. (Dckt. 31.)

In November 2013, the Chapter 13 Trustee moved to convert the Debtor's case to Chapter 7 due to the $2,735.00 delinquency in plan payments. (Dckt. 37.) That motion was resolved by a consent order, which increased the required plan payment to $990.00 per month. (Dckt. 41.) In February 2014, the Chapter 13 Trustee filed a notice of noncompliance with the consent order and once again moved to convert the case to Chapter 7. On April 9, 2014, the Court converted the case to Chapter 7. (Dckt. 61.)

Upon the conversion, Mr. Roach was appointed as the trustee. He employed counsel, Margaret Puccini, who filed an adversary proceeding against the Debtor and her sons, Alfreddi and Charles Mingledorff, to compel the sale of the jointly owned property at 4501 Meadow Street pursuant to 11 U.S.C. § 363(h). (Dckt. 87.)

The Debtor timely filed her answer to the adversary complaint on September 29, 2014. (Adv. dckt. 10.)[1] The Debtor's sons never answered the complaint. On January 28, 2015, the Debtor filed a motion to reconvert her case to Chapter 13. (Dckt. 104.)

The Debtor's motion to reconvert recited that the Debtor "has now been approved for a reverse mortgage loan" that would "generate Funds sufficient to pay in full all claims filed in the Chapter 13 case upon closing." (Dckt. 104.) Also, the Debtor agreed as a part of the reconversion "to allow the Chapter 7 trustee a claim for administrative fees in the amount of $3,000.00, to be paid in full along with the other claims in the [Chapter] 13 case." (Dckt. 104.) The Debtor's original proposed order on reconversion included language granting a $3,000.00 administrative claim to the Chapter 7 Trustee.

At the February 26, 2015 hearing on the motion to reconvert, the Debtor's attorney advised that an administrative claim for Ms. Puccini would be agreed to, but the Chapter 13 Trustee had not yet consented to her claim because the motion had not been filed. Regarding the Chapter 7 Trustee's fees, the Court inquired about the basis for calculating the fee and directed Mr. Roach to file an application. Then, counsel for the Debtor was directed to resubmit a proposed order that allowed reconversion to Chapter 13 without the language awarding compensation to the Chapter 7 Trustee. Mr. Roach consented to that revised order in writing.

---

[1] Citations to the related adversary proceeding in this case, *Roach v. Mingledorff*, No. 14-04042-EJC, will appear simply as "(adv. dckt.)."

4

On March 2, 2015, the Chapter 7 Trustee filed the Fee Application now being considered by the Court. (Dckt. 113.) The application states that he "administered the case assuming it to be an asset case and, therefore, did not maintain a detailed time log of activity for the case." Notwithstanding the lack of time records per se, Mr. Roach set forth the following itemized activities that he performed during the course of the Chapter 7 case:

> a. Conducted initial examination and investigation of the petition and review of the values and marketability of the assets.
> b. Prepared for and conducted six creditor meetings – on May 15, 2014 (initial meeting, docket #70), June 5, 2014 (docket #73), July 3, 2014 (docket #77), August 8, 2014 (docket #86), September 11, 2014 (docket #90), and October 31, 2014 (docket #92). The Debtor Ms. Mingledorff was in a nursing home and physically and mentally unable to be heard at a creditor's meeting. Through the combined efforts of the Petitioner, the Trustee's Attorney and the Debtor's Attorney, we were able to finally locate the son and conduct the meeting.
> c. Entered assets, prepared and filed the Notice of Assets and Request for Bar Date.
> d. Prepared and filed Application to Employ an Attorney.
> e. Assisted Attorney in the preparation and filing an Adversarial/Complaint to recover the property and be able to market it.
> f. Prepared for and attended numerous hearings, including those docketed as items 68, 74, 102 and 107.
> g. Prepared numerous communications/e-mails to the Debtor's Attorney, the Trustee's Attorney and the representative from Harbor Mortgage, who was attempting to obtain approval for the reverse mortgage.
> h. Prepared and filed an Abandonment of assets which had no non-exempt equity.

(Dckt. 113, at 2.) The Chapter 7 Trustee estimates that he spent between fifteen and twenty hours performing this work, which at a rate of $325.00 would yield total fees of

$4,875.00 to $6,500.00. Nevertheless, the Fee Application seeks an award of only $3,000.00.

The adversary proceeding filed by the Chapter 7 Trustee, which was neither tried nor settled, did not result in the recovery of any money into Mr. Roach's hands. The Chapter 7 Trustee did not obtain or even seek the Court's approval of any compromise of the adversary proceeding against the Debtor and her sons. Instead, it appears that to resolve the pending adversary and avoid the Chapter 7 Trustee's sale of the Meadows Street property, the Debtor[2] made arrangements to obtain a reverse mortgage on the property in an amount sufficient to pay all of her creditors' claims as well as the anticipated Chapter 7 administrative claims of Mr. Roach and Ms. Puccini. At the February 26, 2015 hearing, the parties represented that the particular reverse mortgage lender that the Debtor wishes to use insists that it will only provide the mortgage within a Chapter 13 case. For that reason, Mr. Roach did not oppose the reconversion to Chapter 13. After the case was converted, the Chapter 7 Trustee's adversary proceeding was simply dismissed. (Adv. dckt. 22.)

III. **CONCLUSIONS OF LAW**

The narrow issue presented in this case is whether a former Chapter 7 trustee in a converted Chapter 13 case is entitled to compensation when he or she has

---

[2] The Debtor's alleged mental incapacity or disability has been asserted by her counsel in numerous filings throughout this case. (*See, e.g.*, adv. dckt. 11 ("Upon information and belief, counsel shows that the Debtor suffers from severe mental disabilities, and is not capable of understanding the Adversary Proceeding or participating therein. Counsel submits that appointing a guardian ad litem is necessary and a fair remedy in this circumstance.").) As a result, it is unclear how this proposed loan transaction would be consummated by the Debtor.

6

neither made distributions to creditors nor turned over any money to another trustee. For their part, the Debtor and the Chapter 7 Trustee agree that Mr. Roach is entitled to a $3,000.00 administrative claim.

Even so, notwithstanding the lack of an objection by a party in interest, the Court has an independent duty to review the Fee Application in this case. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3d Cir. 1994) ("holding that bankruptcy courts have an independent duty to review fee applications even absent objections") ("Disagreeable as the chore may be, the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors."); *In re Silvus*, 329 B.R. 193, 204 (Bankr. E.D. Va. 2005) ("[T]his Court remains obligated to independently review the validity and reasonableness of fee applications regardless of proposed resolutions or the lack of objections."); *cf. Davis v. Matt Gay Chevrolet, Inc. (In re Davis)*, 374 B.R. 366, 371 (Bankr. S.D. Ga. 2007) (Davis, J.) ("[T]his Court has an independent duty to review attorneys' fee applications."). "Also, it should be noted that a request for administrative expenses, unlike a proof of claim, is not deemed allowed in the absence of an objection and does not constitute prima facie evidence of the validity and amount of the request." *In re Silvus*, 329 B.R. at 205 (internal quotation marks omitted).

In a factually similar case, the bankruptcy court in *In re Giger* rejected a Chapter 12 trustee's argument that the court could award compensation to the former Chapter 7 trustee without judicial scrutiny based on his and the debtor's consent and

7

the purported fact that non-objecting parties would not be harmed. The court reasoned that:

> (1) A request for an award of compensation under § 330(a) invites judicial discretion. (2) When, as under [the debtor's] second plan, a request is made in connection with a plan, additional scrutiny is required as a condition of confirmation. (3) If [the Chapter 7 trustee's] request is allowed, he will be paid ahead of general creditors. Confirmation may be denied. If so, [the debtor] would be entitled to a refund of payments made. In such event, that refund would be reduced by the balance due [to the Chapter 7 trustee]. Similarly, if the case is converted or dismissed, [the Chapter 7 trustee] would be entitled to keep whatever he had received. [The Chapter 7 trustee] would not have been entitled to such up-front payments if the chapter 7 had gone full term. (4) The agreement of the parties did not cover any sharing arrangement between [the Chapter 7 trustee and the Chapter 12 trustee], leading [the court] to assume that each was to be paid in full. (5) Non-professionals have difficulty understanding why the priorities favor trustees, lawyers and other professionals in bankruptcy cases. For this reason alone, any attempt to stretch those priorities should be examined.

*In re Giger*, 504 B.R. 286, 287–88 (Bankr. D. Me. 2014) (footnotes omitted).

Having found that the Court has an independent duty to review the Fee Application, I now turn to the merits of the application. The Chapter 7 Trustee argues that his request is reasonable compensation for actual and necessary services within the meaning of § 330(a) and, therefore, should be allowed as an administrative expense under § 503(b)(2) and paid through the Debtor's Chapter 13 plan. His request should be readily granted in this case, he contends, due to the Debtor's consent to his claim.

The obstacle in this case, however, is that § 330(a) is subject to § 326. *See* 11 U.S.C. § 330(a)(1) (providing that "[a]fter notice to the parties in interest and the United States Trustee and a hearing, and *subject to sections 326*, 328, and 329, the

court may award to a trustee . . . reasonable compensation for actual, necessary services rendered by the trustee . . . [and] reimbursement for actual, necessary expenses" (emphasis added)). Section 326 provides in relevant part:

> (a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, *not to exceed* 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, *upon all moneys disbursed or turned over in the case by the trustee to parties in interest*, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a) (emphasis added). This statute "fixes the maximum award a court may give a trustee according to a sliding scale." *In re Giger*, 504 B.R. at 288. In contrast, awarding compensation to a Chapter 7 trustee's *attorney* does not implicate § 326(a).[3] *See In re Scott*, No. 05 B 10001, 2006 WL 566441, at 3 (Bankr. N.D. Ill. Mar. 7, 2006); *In re Colburn*, 231 B.R. 778, 785–86 (Bankr. D. Or. 1999).

Courts have struggled to find a legal basis for compensating a Chapter 7 trustee who has expended considerable effort in the performance of his or her statutory duties in an asset case that is converted to another chapter before the trustee has the opportunity to administer the assets. Because the Bankruptcy Code does not have a special, converted-case rule for how to calculate a Chapter 7 Trustee's compensation, courts have developed six distinct theories for how to treat such situations. *See In re Philips*, 507 B.R. 2, 5 (Bankr. N.D. Ga. 2014) ("More simply, these cases tend to fall

---

[3] After notice and hearing, the Court granted Ms. Puccini's application for an administrative expense claim. (Dckt. 136.)

9

into three main categories: some cases hold that the amount payable is zero when the trustee has made no disbursements; others hold that the cap simply does not apply to a case that is no longer a case under Chapter 7; still others hold that the cap applies but it is calculated based on funds distributed by any trustee after conversion to Chapter 13."). The different lines of reasoning for the varying approaches have been examined at length in reported decisions and will not be reproduced here. *See, e.g., In re Silvus*, 329 B.R. at 215 (collecting cases).

"It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). Although the statutory scheme at issue here may not be a model of clarity, *see In re Philips*, 507 B.R. at 5, the Court holds that "the language of Section 326(a) is "clear and unambiguous" on the point "that reasonable compensation to a Chapter 7 Trustee" cannot be calculated "without any disbursements or money turned over to any parties in interest." *In re Silvus*, 329 B.R. at 215; *see also In re Celano*, No. CIV.A. 01-1310, 2001 WL 1586778, at *4 (E.D. La. Dec. 7, 2001) (rejecting, based on a plain language reading of § 326(a), a former Chapter 7 trustee's arguments that § 326(a) should only apply in fully administered cases and that the distributions made later by the Chapter 11 trustee should be imputed to her); *In re Fischer*, 210 B.R. 467, 469 (Bankr. D. Minn. 1997); *cf. Pritchard v. U.S. Tr. (In re England)*, 153 F.3d 232, 235–37 (5th Cir. 1998) (applying a plain language interpretation of § 326(a)). Perhaps, a more precise statement would be that where no distributions are made and no money is

turned over, the plain language of § 326(a) directs that the calculation of the trustee's maximum compensation yields a result of $0. Neither §§ 326 and 330 nor any other provision of the Bankruptcy Code direct that § 326(a) does not apply once a case has been converted to Chapter 13.[4]

As the Supreme Court recently stated: "'Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding,' and that is no less true in bankruptcy than it is elsewhere." *Baker Botts L.L.P. v. ASARCO LLC*, No. 14-103, slip op. at 12 (U.S. June 15, 2015) (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004)). The plain language of the statute leads to a harsh result in this case because the Chapter 7 Trustee has expended time and effort in the performance of his statutory duties. Yet, the Court cannot say that this result is so absurd that the Court may substitute its own judgment for the plain meaning of the text.[5] It is plausible that Congress intended that Chapter 7 Trustees would be compensated over and above their $60 portion of the filing fee only if they actually administer assets. *See In re Giger*, 504 B.R. at 289 ("This objective, results-based approach excludes former chapter 7 trustees because they do not make distributions."). The BAPCPA amendments bolster this interpretation. As the District Court for the Eastern District of Wisconsin explained:

---

[4] Section 1326(b)(3), which is not applicable in this case, provides a limited avenue for a Chapter 7 trustee to receive payment in a Chapter 13 case for compensation awarded to that trustee due to the conversion or dismissal of the debtor's prior case under § 707(b). *See* 11 U.S.C. §§ 707(b)(4), 1326(b)(3).

[5] *See In re Giger*, 504 B.R. at 289 ("The rules of construction serve to dampen a judge's temptation to legislate a favorable result when the obligatory one is unkind; or when a statute is silent." (footnotes omitted)).

>Prior to BAPCPA's enactment, § 330(a)(3) stated that, in determining the amount of reasonable compensation to be awarded to a Chapter 7 trustee (and to certain other participants in a bankruptcy case), "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors." This provision then listed several factors that the court could consider, including the time spent on the services and the rates charged for such services. Prior to BAPCPA, many courts interpreted the Code as mandating the "lodestar approach" to determining a Chapter 7 trustee's reasonable compensation, in which a trustee's fee is generally calculated by multiplying the reasonable number of hours worked by a reasonable hourly rate.
>
>BAPCPA did not remove § 330(a)(3) from the Code. However, it removed Chapter 7 trustees from its ambit—as amended, § 330(a)(3) applies only to examiners, Chapter 11 trustees, and professionals who render services in a bankruptcy case. At the same time, BAPCPA added a new provision to the Code, § 330(a)(7), which provides that "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326."

*Mohns, Inc. v. Lanser*, 522 B.R. 594, 596–99 (E.D. Wis. 2015) (citation omitted), *appeal filed*, No. 15-1150 (7th Cir. Jan. 26, 2015). The court concluded that "[i]n removing Chapter 7 trustees from § 330(a)(3) and directing courts to treat the trustee's compensation as a commission, Congress made clear that a trustee's compensation should be determined on the basis of a percentage, rather than on a factor-based assessment of the trustee's services or on the basis of the lodestar method."[6] *Id.* at 599.

---

[6] A split of authority has emerged regarding whether, in light of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a bankruptcy court is required, absent extraordinary circumstances, to compensate Chapter 7 trustees on a commission basis. *Compare In re Rowe*, 750 F.3d 392, 398 (4th Cir. 2014) (holding that "§ 330(a)(7) creates a presumption, but not a right, to a statutory maximum commission-based fee for Chapter 7 trustees" absent extraordinary circumstances), *with In re Mack Props., Inc.*, 381 B.R. at 799 (holding that under "the clear,

"The purpose of a Chapter 7 case is to administer efficiently the liquidation of the estate for the benefit of the creditors." *U.S. Tr. v. Fishback (In re Glados, Inc.)*, 83 F.3d 1360, 1365 (11th Cir. 1996). "Being a chapter 7 trustee is a difficult and risky business. While the trustee is entitled to a statutory part of the filing fee, currently $60.00, that amount rarely compensates the trustee for the time spent on the case. Trustees can only hope that by achieving certain efficiencies by way of volume and by making a substantial fee in an occasional case, that the work of a trustee will be profitable." *In re Fischer*, 210 B.R. at 469; *see also In re Mack Props., Inc.*, 381 B.R. 793, 799 (Bankr. M.D. Fla. 2007) ("In too many cases [Chapter 7 trustees] are not adequately compensated for their services."); *In re Murphy*, 272 B.R. 483, 486 (Bankr. D. Colo. 2002) ("In funding the Chapter 7 bankruptcy trustee system, not with appropriations but with a percentage of moneys actually collected and distributed to parties in interest, fairness to trustee, incentives for discharging fiduciary responsibilities, and rewarding valuable services were not foremost on Congress's agenda.").

After the Court took the issue of whether the Chapter 7 Trustee was entitled to the $3,000.00 administrative expense under advisement, the Debtor filed a brief in support of Mr. Roach's position.[7] Citing *In re Colburn*, 231 B.R. 778 (Bankr. D. Or. 1999), the Debtor argues that § 326(a) does not control a Chapter 7 trustee's

---

unambiguous language of Sections 326 and 330," the reasonableness standard continues to apply to Chapter 7 trustee compensation determinations).

[7] The Chapter 7 Trustee chose not to submit a brief in support of his Fee Application.

compensation in cases converted to Chapter 13 where no estate assets have been collected.[8] (*See* dckt. 138, at 2.)

In *In re Colburn*, the bankruptcy court held that § 326(a) does not limit a Chapter 7 Trustee's compensation once the case is converted to Chapter 13 because the statute's language "read literally" only applies "[i]n a case under chapter 7 or 11." This Court respectfully disagrees. The phrase "[i]n a case under chapter 7 or 11" is merely intended to convey that those types of trustees are subject to that provision. The phrase "[i]n a case under chapter 12 or 13" similarly limits the application of § 326(b) to those types of trustees. Also, it would be absurd to find that Congress intended to limit a Chapter 7 trustee's compensation in cases where the trustee fully administered all assets in the case but did not intend to limit that trustee's compensation if the case was converted before any distributions were made.

In closing, I agree with the following sentiment expressed by the Bankruptcy Court for the Eastern District of Virginia: "Congress would do well to consider whether in the circumstances of cases converted to Chapter 13, a different measure of Chapter 7 Trustee compensation other than that expressly provided by Section 326 is appropriate. That task, under our scheme of constitutional government, lies exclusively within the province of Congress." Here, the perceived unfairness of allowing the Chapter 7 Trustee to go uncompensated for work done prior to the

---

[8] The Debtor also argues that a Chapter 7 trustee's fees in a case converted to Chapter 13 are not controlled by § 326(c). (*See* dckt. 138, at 3.) Because the Court holds that the plain language of § 326(a) precludes the Court from awarding the fees sought by Mr. Roach, the Court declines to address to what extent, if any, § 326(c) would limit the Chapter 7 Trustee's entitlement to the $3,000.00 sought.

conversion is not a determinative factor. The Chapter 7 Trustee consented to the conversion to Chapter 13, which was not conditioned upon the Court's approval of his fees (although perhaps with the expectation that such fees would be approved). Because the Chapter 7 Trustee did not disburse or turn over money to parties in interest, the Chapter 7 Trustee's Fee Application must be denied.

The Court will enter a separate order consistent with these findings of fact and conclusions of law.

*It is so ordered.* Dated at Savannah, Georgia, this 23rd day of June, 2015.

_____
Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia